UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 18-10102-DJC |
| v. | ) | |
| | ) | |
| ASHLEY BARRETT, | ) | |
| Defendant. | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

On November 30, 2018, the defendant, Ashley Barrett ("BARRETT"), pled guilty to one count of Mail Fraud, in violation of 18 U.S.C. § 1341. Sentencing is scheduled for February 26, 2019. The signed plea agreement is docket no. 47.

For the reasons stated herein, the government respectfully requests that the Court sentence BARRETT to 33 months in prison, three years of supervised release, a restitution order in the amount of $325,148,[1] and a $100 mandatory special assessment.

**FACTS**

BARRETT knowingly and willfully participated in a lottery fraud scheme that targeted vulnerable seniors across the country. She defrauded twelve elderly victims out of more than $325,000 sent by check or wire. This amount does not include additional cash losses incurred by the twelve victims and a thirteenth victim, A.D.

Scam victims tend to be vulnerable. The elderly are more likely to be duped, particularly older people without a close family member to look out for them and the security of their finances:

---

[1] The government stated in the plea agreement that it would request restitution in the amount of $333,148. *See* Plea Agreement, ¶ 4(d). This calculation neglected to factor in that Bank of America reimbursed Victim 3 $8,000. *See* Exhibit 1 attached hereto; *see also* PSR ¶ 24 n.7 and ¶ 125 n.10. Accordingly, the government has reduced its restitution request to $325,148.

> Most victims who become the targets of fraud scams are considered to be in the naïve segments of the population. Unfortunately, elderly individuals are the most frequent targets of fraud scams. Fraudsters target the elderly, as they may be lonely, willing to listen and are more trusting than younger individuals. Many fraud schemes against the elderly are performed over the telephone, door-to-door or through advertisements. The elderly are prime targets to schemes attributed to credit cards, sweepstakes or contests, charities, health products, magazines, home improvements, equity skimming, investments, banking or wire transfers, and insurance.

Association of Certified Fraud Examiners, *Elderly Fraud Scams: How They're Being Targeted and How to Prevent It*, available at https://www.acfe.com/fraud-examiner.aspx?id=4294997223 (accessed on Feb. 18, 2019). Sweepstakes or lottery schemes "usually involve[] contacting elderly victims either by mail or telephone, and informing them that they have won a prize of some sort, but must pay a fee to obtain the prize. Scammers send a fake check to the senior to deposit in their bank account knowing it will take some time for the bank to reject the check. Meanwhile, the victim has sent the scammer money . . . for fees or taxes on the prize." *Id.*

1. **Victim 1 (W.W.)**

Several years ago, a man claiming to be "Mr. Washington" called Victim 1, a 73-year old farmer, Vietnam veteran, Purple Heart recipient, and cancer survivor who lives in Iowa. The caller told Victim 1 that he had won $11 million through the Mega Millions lottery, but first Victim 1 needed to pay taxes on the winnings. Mr. Washington called from a telephone number registered to a mobile phone provider in Jamaica. Mr. Washington said he was an agent of the lottery. He told Victim 1 to pay the taxes via prepaid debit cards called Green Dot cards. Victim 1 bought Green Dot cards and read the card numbers to Mr. Washington over the phone to pay his "taxes." Victim 1 received two checks from Mr. Washington, but both bounced. Victim 1 stopped taking calls from Mr. Washington when he realized he was not going to receive any lottery winnings.

Victim 1 received a notice in the mail purporting to come from the IRS. The notice stated that the "Federal Reserve Banking Headquarters" was withholding $11 million, described as "a prize winning" for Victim 1 "courtesy of the Mega Millions Group/CMBLC." The notice went on to say: "No US-based lottery will pay out any winnings without first deducting the taxes due on those winnings – usually, a full 30%."

In or about 2015, Victim 1 began receiving calls from someone purporting to be an FBI agent named David Schneider. "Agent Schneider" told Victim 1 that he would help Victim 1 get his money back from the "lottery scammers." Agent Schneider directed Victim 1 to send money to BARRETT, and provided her address in Hyannis, MA. Agent Schneider said BARRETT was also an FBI agent.

"Agent Schneider" called Victim 1 from mobile telephone number (xxx) xxx-8768. Provider records for this number show that the subscriber was N.B., whose address was identified as the same Hyannis location where BARRETT lived. BARRETT told Barnstable Police that N.B. was her brother. Based on what she told Probation, however, she does not have a brother named N.B. *See* PSR ¶¶ 86-89. Between July 22, 2015, and February 24, 2016, over 140 calls were placed from (xxx) xxx-8768 to Victim 1's number.

Victim 1 received an undated notice in the mail purporting to be from "Agent David Sneidjer, Regional Director, FBI, Washington, DC." A copy of the notice is attached as Exhibit 2. The notice stated that the FBI had intercepted two "trunk boxes" at JFK Airport containing $11 million and "backup document which bears your name as the receiver of the money." It said a diplomat was supposed to deliver the money to Victim 1 "as payment which was due you from the office of federal government in Nigeria from unpaid beneficiary." The notice directed Victim 1 to contact the FBI for instructions on how to get a certain certificate "so that you can be

3

relieved of the charges of money laundry." The notice said that if Victim 1 did not contact the FBI immediately, "you will be arrested, interrogated and prosecuted in the court of law for money laundry." A copy of this notice was found in BARRETT's husband's email account, which agents searched pursuant to a federal search warrant. The email was sent on May 8, 2015, from an email address identified as N.B.'s.

As noted above, "Agent Schneider" directed Victim 1 to send money to BARRETT, saying she was an FBI agent. Believing that BARRETT was an FBI agent who was going to help him, Victim 1 mailed BARRETT both checks and cash. The memo line on the first check that Victim 1 mailed BARRETT, dated May 20, 2015, reads "FBI Agent."

Between May 22 and July 13, 2015, BARRETT deposited eight checks from Victim 1 into her account at Citizens Bank. They totaled $27,098. The seventh check is the basis for Count Seven of the indictment, to which BARRETT has pled guilty.

Victim 1 also mailed BARRETT cash. Between November 10, 2015, and February 5, 2016, he sent BARRETT cash in ten USPS Priority Express envelopes. Victim 1 did not keep a record of the amount of cash he enclosed with each mailing, but he believes that each mailing included at least $2,000.

Victim 1 was the victim of several lottery scams spanning seven or eight years. He estimates that he lost about $1 million in these scams. Sadly, it is not unusual for a person to be targeted by multiple scams. It is well known to law enforcement that fraudsters contact many people, knowing they will dupe only a few. When they identify a victim, the victim's name and contact information often are placed on a "suckers list" that is circulated among fraudsters, usually for a price. "When someone falls for a scam letter, their name is likely to end up on other suckers lists broken down into categories like sweepstakes lovers, opportunity seekers and highly

responsive buyers. Scammers target specific types of victims who might be drawn to their schemes, as well as elderly consumers often suffering from diseases like dementia." Blake Ellis and Melanie Hicken, *CNN Investigates: How to Get Off a Scammer's Suckers List*, available at https://www.cnn.com/2018/08/07/world/data-broker-suckers-lists-invs/index.html (accessed on Feb. 19, 2019).

Victim 1 has provided a victim impact statement by video. He explains that he borrowed money from the bank to pay BARRETT and the other scammers, and he now owes the bank more than $700,000.

**2. Victim 2 (D.P.)**

Victim 2 is a 73-year old retiree who lives in Pennsylvania. She lives with her husband, a Korean veteran who is bedridden as a result of a stroke.

Between September 17 and 21, 2012, BARRETT deposited eight checks from Victim 2 totaling $26,000 into her account at TD Bank.

Victim 2 began receiving calls in late 2010 or early 2011. Initially she was told that she had won $10 million in the lottery, plus many cars and a truck. She was told that, in order to receive her prizes, she had to pay the taxes and customs fees up front. She was instructed to send money via MoneyGram and Western Union, as well as by check. She sent a total of at least $200,000 to people in the United States and in Jamaica, including the checks deposited by BARRETT.

Victim 2 has provided a victim impact statement by video. She explains how she and her husband have lost their home, an RV, a truck, and, most important, their credit. She also explains how her children and her sister tell her she was stupid to send money, and now she feels worthless.

3. **Victim 3 (D.B.)**

Victim 3 lived in Florida. In 2018 she died at age 93 from Alzheimer's disease. She was widowed at a relatively early age, and worked at a job from which she earned a pension. She had no children. Her nephew, M.C., tried to help her with her finances in her later years. He lived nearby.

Between May 7 and 27, 2015, BARRETT went to a Bank of America branch in Hyannis and cashed three checks from Victim 3, for $8,000, $8,000, and $9,000.[2]

One day in 2015, M.C. took Victim 3 to run errands, including a visit to a Bank of America branch. Later that day, Victim 3 told her nephew that someone had taken $9,000 out of her Bank of America account, and she blamed him. M.C. contacted the bank, which said that someone actually had tried to cash a $9,000 check written by Victim 3 on her account but the bank had blocked it as fraud. M.C. learned that his aunt previously had written large checks to strangers and the checks had been cashed. The bank recommended that M.C. become a co-owner on his aunt's account. By doing so, he was able to stop $40,500 in additional checks that his aunt wrote to strangers on her Bank of America account.

When M.C. asked his aunt about the checks, she said that someone purportedly named Ashley BARRETT had called her and told her she had won $11.8 million in the lottery. Victim 3 told M.C. that she had a check somewhere for the winnings, but M.C. did not find any such check. M.C. asked his aunt why she was sending money to someone she did not know. His aunt could not provide an answer. M.C. asked, "What are they going to do for you?" His aunt replied, "I don't know."

M.C. asked Verizon if anything could be done to stop scammers' phone calls to his aunt.

---

[2] Bank of America reimbursed Victim 3 for one of the $8,000 checks. *See* Exhibit 1.

Verizon said all they could do was change her telephone number. At some point after Victim 3's number was changed, M.C. was visiting her when a Verizon operator called and asked if the company could give Victim 3's new number to someone claiming to be her grandson. M.C. told Verizon not to give out his aunt's number, as she had no children and therefore no grandchildren.

Speaking on behalf of his deceased aunt, M.C. has provided a victim impact statement by video. He explains that when he asked his aunt why she had written yet another check to BARRETT after they had discussed that his aunt was being defrauded, she replied that she "just wanted to get her off [my] back." This is how M.C. learned that his aunt was continuing to receive harassing phone calls demanding that she send money to BARRETT.

### 4. **Victim 4 (N.C.)**

Victim 4 is a 77-year old retired nurse from Pennsylvania. She is a widow and lives alone.

On December 18, 2015, BARRETT deposited two checks totaling $18,000 sent to her by Victim 4. She deposited one check into her account at Citizens Bank and the other into her account at Eastern Bank.

In the summer of 2015, unknown persons called Victim 4 and told her that she had won the Mega Millions lottery and a car. They told her she needed to send money via MoneyGram and Western Union to various people across the country and abroad in order to release her winnings. Victim 4 estimates that she paid over $100,000 to release her alleged winnings. One of the callers claimed to be "Joe Washington."

In or about December 2015, someone claiming to be FBI Special Agent "David Schneider" called Victim 4 from (xxx) xxx-8768. This is the same number registered to BARRETT's address in Hyannis that alleged FBI agent "David Schneider" used to call Victim 1.

"Agent Schneider," who had a Jamaican accent, told Victim 4 that he knew she had been sending money to various people and that she was going to be arrested for money laundering unless she mailed money to BARRETT. In one phone call, "Agent Schneider" directed Victim 4 to take money out of her retirement account (about $40,000) and to use her home equity line of credit (about $30,000).

Victim 4 mailed BARRETT some checks but mostly cash. She estimates that she sent BARRETT a total of approximately $70,000. Between November 25, 2015, and February 5, 2016, Victim 4 mailed cash to BARRETT in seven USPS Priority Mail Express envelopes, whose receipts she kept.

Victim 4 has provided a victim impact statement by video. She explains that she was able to retire at age 59 and was living off her retirement income and savings until she was victimized by BARRETT and others. Because she lost so much money as a fraud victim, she now has to work two part-time jobs, each paying $8/hour. She feels like a "stupid old lady." Sometimes she receives gift cards from family members, but they never trust her with cash.

5. **Victim 5 (M.G.)**

Victim 5 died in 2015 at age 87. He was a Navy veteran who lived in Arkansas.

Between April 29, 2013, and June 20, 2014, BARRETT received nine wire transfers, and deposited five checks, from Victim 5. The payments totaled $149,050. BARRETT received these wires, and deposited the checks, into accounts in her name that she had opened at four different banks: TD Bank, Citizens Bank, Bank of Cape Cod, and Cape Cod Five Cents Savings Bank.

N.T. is a bank employee in Arkansas who knew Victim 5 and was familiar with his account at the bank. She recalls that Victim 5 sometimes came into the bank several times a day requesting checks. He told N.T. and other employees that he had won the lottery and cars. Victim

5's sons tried to stop him from sending money but he refused and instead "sold farm after farm," according to N.T. When N.T.'s bank threatened to close Victim 5's account, he just moved his money to another bank.

**6.  Victim 6 (C.S.)**

Victim 6, age 88, lives in South Carolina. She has no husband or children.

Between January 26 and May 1, 2015, BARRETT received two wire transfers, and deposited three checks, from Victim 6. The payments totaled $43,500. BARRETT received these wires, and deposited the checks, into her accounts at Citizens Bank and Bank of Cape Cod.

Victim 6 received several calls from someone purporting to be "Jason Adams," who said Victim 6 had won $15 million in a sweepstakes but she needed to pay taxes and fees to collect her winnings. Sometimes Adams claimed to be calling from Washington, DC; other times he claimed to be calling from Jamaica.

Victim 6 also received a call from someone purporting to be "David H. Kennedy." He claimed to be a federal marshal working with the "Sweepstakes Commission" in Jamaica. Kennedy told Victim 6 that Jason Adams was a scammer who had recently died in a car accident in Jamaica. Kennedy instructed Victim 6 to mail money to certain addresses in Hyannis, MA, including BARRETT's, to recover her money.

Because of the scams in which she was victimized, Victim 6 had to sell her home and car and is now in significant debt. She has several debts in collection. She also was sued by South Carolina Federal Credit Union for bad payments on her credit card.

**7.  Victim 7 (M.S.)**

Victim 7 is 84 years old and lives in Indiana. She never married and has no children. When agents interviewed her in 2017, a caretaker was present. Local police told agents that

Victim 7 has been the victim of various financial scams and Adult Protective Services has had to intervene on her behalf.

Victim 7 received phone calls from someone purporting to be "Mr. Green" from Publishers Clearing House. He told her that she had won a prize of $5,000-$10,000 per month but needed to pay money in order to claim it. Mr. Green directed Victim 7 to pay BARRETT and others.

On January 26 and February 19, 2016, BARRETT deposited two checks from Victim 7 totaling $18,000 into her account at Citizens Bank.

8. **Victim 8 (B.C.)**

Victim 8, age 80, lives in Georgia.

In 2015, someone called Victim 8 and her husband and told them they had won a lottery prize consisting of $32 million and two Mercedes Benz vehicles. Over the next two years several people called Victim 8 and her husband and told them to send money to various people in different states and Jamaica in order to claim their lottery prize. Victim 8 and her husband lost an estimated $50,000. Mostly they mailed cash, but they also sent checks and wired money through MoneyGram and Western Union. They were contacted by several people, including a woman who identified herself as "Mary." In addition, someone posing as an FBI agent called and offered to help, but the caller did not seem legitimate so Victim 8's husband hung up.

On August 8, 2015, BARRETT deposited a $9,000 check from Victim 8 into her account at Citizens Bank. The check was mailed by Victim 8's husband after a female caller gave him BARRETT's name and address. He sent the check to claim the alleged lottery prize, but he and his wife never received any such prize.

9. **Victim 9 (A.K.)**

Victim 9 is 90 years old. He lives in Illinois. On October 20, 2015, BARRETT deposited a $5,000 check from Victim 9 into her account at Eastern Bank.

10. **Victim 10 (J.M.)**

Victim 10 is 84 years old. He lives in Kentucky. On May 18, 2015, BARRETT deposited an $8,000 check from Victim 10 into her account at Citizens Bank.

11. **Victim 11 (P.T.)**

Victim 11, age 89, lives in Virginia. On January 7 and 8, 2016, she sent two wire transfers totaling $3,000 into BARRETT's account at Eastern Bank.

12. **Victim 12 (E.B.)**

Victim 12, age 87, lives in Texas. On January 5, 2016, he wired $2,000 into BARRETT's account at Citizens Bank.

13. **Victim 13 (A.D.)**

Victim 13 is a 95-year old woman who lives in West Virginia.

In July 2015, U.S. Postal Inspectors intercepted a Priority Express envelope from Victim 13 addressed to BARRETT in Hyannis. Victim 13 told the inspectors that someone claiming to be "Karen" called her in the summer of 2015 and told her that she had won $2.5 million in the lottery. Karen instructed Victim 13 not to tell anyone. Karen told Victim 13 that, in order to release her winnings, she had to send money to BARRETT in Hyannis, MA. Victim 13 told inspectors that she had already mailed a $1,000 money order to BARRETT.[3] The intercepted Priority Express envelope contained an $8,000 check from Victim 13 to BARRETT.

---

[3] Victim 13's loss of $1,000 cash is not included in the government's request for a $333,148 restitution award, which includes only checks and wire transfers.

14. **Recent Conduct**

BARRETT claims that her participation in the lottery fraud scheme ended when federal agents executed a search warrant at her apartment in March 2016. *See* Def. Objection #3 to PSR ¶¶ 55-56. And yet the following occurred.

On March 21, 2018, a post office in Hyannis intercepted a package addressed to "John Baker" at BARRETT's address. The package contained $150 cash. It was mailed by E.B., a 76-year old widow from Mississippi who sent the money after a caller told her she had won the lottery but she needed to pay fees in order to get her winnings.

On March 30, 2018, the post office in Hyannis intercepted a package containing $300 cash addressed to "David James" at BARRETT's address. It was mailed by C.B., a 77-year old woman from Illinois who sent the package after a caller told her that she had won the sweepstakes.

There was no "John Baker" or "David James" registered at BARRETT's address.

## GUIDELINES CALCULATION

The parties and Probation are in agreement that the base offense level is 7, and that 12 levels are added because the loss amount is between $250,000 and $550,000. *See* Plea Agreement ¶ 3; PSR ¶¶ 62-63.

In addition, BARRETT's offense level should be increased by 2 because she knew or should have known that a victim of the offense was a vulnerable victim. *See* USSG 3A1.1(b)(1); *id.* § 3A1.1 App. Note (2) (stating that a "vulnerable victim" includes a victim "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct"). At the change-of-plea hearing, when the Court asked the government to state its version of the facts, the prosecutor stated in relevant part: "The scheme targeted

elderly victims who did not know BARRETT." *See* Exhibit 3 attached hereto. BARRETT

agreed, under oath, that this fact was true. Her acknowledgement constitutes an admission of

knowledge.[4]

In addition, BARRETT's offense level should be increased by 2 because the offense

involved a large number of vulnerable victims. *See* USSG 3A1.1(b)(2). All thirteen victims in

this case were elderly. Victim 1 (W.W.) was defrauded in 2015, when he was 69. Victim 2 (D.P.)

was defrauded in 2012, when she was 66. Victim 3 (D.B.) was defrauded in 2015, when she was

90 and suffering from Alzheimer's. Victim 4 (N.C.) was defrauded in 2015, when she was 74.

Victim 5 (M.G.) was defrauded in 2013-2014, when he was 85-86. Victim 6 (C.S.) was

defrauded in 2015, when she was 84. Victim 7 (M.S.) was defrauded in 2015, when she was 80.

Victim 8 (B.C.) was defrauded in 2015, when she was 77. Victim 9 (A.K.) was defrauded in

2015, when he was 87. Victim 10 (J.M.) was defrauded in 2015, when he was 80. Victim 11

(P.T.) was defrauded in 2016, when she was 86. Victim 12 (E.B.) was defrauded in 2016, when

he was 84. Victim 13 (A.D.) was defrauded in 2015, when she was 92. There is also evidence

that in 2018, BARRETT was involved in efforts to defraud two more elderly victims, E.B. (age

76) and C.B. (age 77). Although the Sentencing Guidelines do not define "large number," the

government submits that thirteen, if not fifteen, victims qualifies as a large number. *Cf. United

States v. Kaufman*, 546 F.3d 1242, 1269 (10th Cir. 2008) (holding that ten victims qualifies as a

"large number" under USSG 3A1.1(b)(2), at least with regard to victims of involuntary

servitude) (relying on USSG 2H4.1 cmt. n.3., which states, "If the offense involved the holding

---

[4] The only fact stated by the prosecutor that BARRETT disputed was the start date of the
fraud scheme. The government stated that the scheme began in September 2012. *See* Exhibit 3.
BARRETT disagreed, saying that the scheme began on September 28, 2013, the day after she
became a naturalized citizen. Probation agrees that the scheme began in September 2012. *See*
Def. Objection #1 to PSR ¶ 10, and Probation Officer's Response.

of more than ten victims in a condition of peonage or involuntary servitude, an upward departure may be warranted."). Just as the *Kaufman* court relied on another guideline to support its interpretation of "large number" as that term is used in USSG 3A1.1(b)(2), this Court may rely on another guideline in interpreting that language. Specifically, it may rely on USSG 2B1.1(b)(2)(A)(i), which provides for a 2-level increase in theft and fraud cases that "involve[] 10 or more victims."

The government joins Probation in urging the Court to reject BARRETT's request for a four-level "mitigating role" decrease under USSG 3B1.2(a). BARRETT claims she was a "minimal participant" in the fraud scheme. *See* Def. Obj. #5 to PSR ¶ 66. The evidence shows otherwise. For no less than **forty months** BARRETT received check after check, wire after wire. She also received many envelopes containing large amount of cash. She deposited the checks, and received the wires, in accounts that she opened at five different banks (TD Bank, Citizens Bank, Eastern Bank, Bank of Cape Cod, and Cape Cod Five Cents Savings Bank). She knew that the payments were part of a scheme. *See* Exhibit 3. She knew that the scheme targeted elderly victims. *Id.* She knew that the victims were contacted and told that they had won the lottery but that they needed to pay fees or taxes in order for their lottery winnings to be released. *Id.* She knew that she received checks, wires, and cash from people all across the country because the victims had been directed to pay the alleged fees/taxes to her. *Id.* She knew that the victims never got their money back. *Id.* The phone number used to call Victim 1 and Victim 4 was registered to BARRETT's address – leading to the logical conclusion that BARRETT either called the victims herself or lived with the person who did. BARRETT was deceitful with regard to that phone number, telling Barnstable Police that the subscriber, N.B., was her brother, when, in fact, she does not have a brother named N.B. *See* PSR ¶¶ 86-89. The evidence makes clear that: (i)

BARRETT understood the scope and structure of the criminal activity; (ii) she was an indispensable participant in the scheme; (iii) her participation was longstanding; and (iv) she took deliberate, repeated actions to facilitate the crime, specifically, by going to her banks to deposit the victims' checks (or, in Victim 3's case, by going to a Bank of America branch to cash the victim's checks) and then apparently withdrawing some of the money and sending it to other participants. Although the government does not know how much of the stolen funds BARRETT kept for herself, it stands to reason that she kept enough to motivate her continuing participating in the crime for several years. Accordingly, analysis of the factors listed in USSG 3B1.2 App. Note 3(C) shows that BARRETT is not entitled to a mitigating role decrease.

BARRETT's total offense level is 23. The government has agreed to recommend a 3-level reduction based on her prompt acceptance of responsibility. *See* Plea Agreement ¶ 3. BARRETT's adjusted offense level is 20, which results in a Guidelines range of 33-41 months. The government has agreed to recommend a term of imprisonment at the low end of this range.

The government recommends that BARRETT be sentenced to the maximum term of supervised release – 36 months – to afford adequate deterrence and protect the public from further criminal activity by BARRETT. The need for a long term of supervised release is underscored by the evidence that BARRETT continued to engage in lottery fraud as recently as 2018, even after federal agents executed a search warrant at her apartment in 2016.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence BARRETT to 33 months in prison, three years of supervised release, a restitution order in the amount of $325,148, and a $100 mandatory special assessment.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney


*/s/ Christine J. Wichers*
By:    CHRISTINE J. WICHERS (BBO#631857)
Assistant U.S. Attorney
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3278
christine.wichers@usdoj.gov


**Certificate of Service**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on February 19, 2019.

*/s/ Christine J. Wichers*
Christine J. Wichers

# EXHIBIT 1



**Bank of America**

June 4, 2015

[REDACTED]

LARGO, FL 33771

Regarding account number ending in 5355
Claim number 01JUN2015-334147

Dear [REDACTED]:

Thank you for notifying us of the possible fraud involving your account.

We are pleased to inform you we have completed our investigation and issued a credit to your account ending in 8369, in the amount of $8,000.00 on 06/04/2015. This credit, plus credit(s) for any applicable interest and fees, can be viewed on your next statement. Listed below are the details regarding the above referenced claim and an itemization of adjustments made to your account.

| | |
|---|---|
| Today's Claim Amount | $8,000.00 |
| Fees refunded to account number ending in: | $0.00 |
| Fees refunded to account number ending in: | $0.00 |
| Provisional Credit (if applicable) | $0.00 |
| Total Claim Reimbursement | $8,000.00 |

Please call us toll free at 1-888-701-0075, Extension # 8897883, Monday through Friday from 9:00 a.m. and 6:00 p.m. CT, if you have any questions.

We value your business and look forward to serving you in the future.

Sincerely,

Fraud and Claims

*PER TEL: NANCY ROSAS SAID THIS AMT WOULD BE CREDITED — THE $8000 REPRESENTS THE 'ONLINE' CHECK — "ASHLEY BARRETT"*

# EXHIBIT 2

**From:** AGENT DAVID SNEIDJER
**To:** W███████ W█████
**Subject:** FROM THE FEDERAL
BUREAU OF INVESTIGATION (FBI)


URGENT ATTENTION:
BENEFICIARY,
KINDLY VIEW / READ THE
ATTACHED CONFIDENTIALITY
NOTICE LETTER AND REPLY
BACK TO ME IMMEDIATELY.
Yours In Service
Agent David Sneidjer
Regional Director
Federal Bureau of Investigation
Intelligence Field Unit
J. Edgar Hoover Building
935 Pennsylvania Avenue, NW
Washington, D.C.
20535-0001, USA

---

Federal Bureau of Investigation
Intelligence Field Unit J. Edgar Hoover Building
935 Pennsylvania Avenue, NW Washington, D.C.
URGENT ATTENTION: BENEFICIARY
I AM SPECIAL AGENT DAVID SNEIDJER FROM THE FEDERAL
BUREAU OF INVESTIGATION (FBI) INTELLIGENCE UNIT, WE
HAVE JUST INTERCEPTED AND CONFISCATED TWO (2) TRUNK
BOXES AT JFK AIRPORT IN NEW YORK, AND ARE ON THE
VERGE OF MOVING IT TO OUR BUREAU HEAD QUARTERS.
WE SCANNED THE SAID BOXES, AND FOUND IT CONTAINS
TOTAL SUM OF $11 MILLION AND ALSO BACKUP DOCUMENT
WHICH BEARS YOUR NAME AS THE RECEIVER OF THE MONEY
CONTAINED IN THE BOXES, INVESTIGATIONS CARRIED OUT
ON THE DIPLOMAT WHICH ACCOMPANIED THE BOXES INTO
THE UNITED STATES SAID HE WAS TO DELIVER THIS FUNDS
TO YOUR RESIDENCE AS PAYMENT WHICH WAS DUE YOU
FROM THE OFFICE OF FEDERAL GOVERNMENT IN NIGERIA
FROM UNPAID BENEFICIARY.
WE CROSS-CHECKED ALL LEGAL DOCUMENTATION IN THE
BOXES, AND WERE ABOUT TO RELEASE THE CONSIGNMENT
TO THE DIPLOMAT, WHEN WE FOUND OUT THAT THE BOXES
IS LACKING ONE VERY IMPORTANT DOCUMENTATION, THE
BOXES HAS BEEN CONFISCATED.
ACCORDING TO SECTION 229 SUBSECTION 31 OF THE 1991
CONSTITUTION IN MONEY LAUNDRY, YOUR CONSIGNMENT
LACKS PROOF OF OWNERSHIP CERTIFICATE FROM THE JOINT
TEAM OF THE IRS AND HOMELAND SECURITY, SO THEREFOR,
YOU MUST CONTACT US FOR DIRECTION ON HOW TO
PROCURE THIS CERTIFICATE, SO THAT YOU CAN BE
RELIEVED OF THE CHARGES OF MONEY LAUNDRY WHICH IS A
PUNISHABLE OFFENSE UNDER SECTION 12 SUBSECTION 441

OF CONSTITUTION ON MONEY LAUNDRY.
YOU ARE REQUIRED TO CONTACT THIS BUREAU WITHIN
72HOURS, OR YOU WILL BE ARRESTED, INTERROGATED AND
PROSECUTED IN THE COURT OF LAW FOR MONEY LAUNDRY.
ALSO, YOU MUST NOT CONTACT ANY OTHER BANK OR
PERSONS IN NIGERIA, THE UNITED KINGDOM OR ANY PART
OF THE WORLD FOR ANY PAYMENT, BECAUSE YOUR
PAYMENT HAVE BEEN CONFISCATED BY THIS BUREAU HERE
IN THE UNITED STATES..
YOURS IN SERVICE
AGENT DAVID SNEIDJER
REGIONAL DIRECTOR

EXHIBIT 3

| | |
|---|---|
| **From:** | Wichers, Christine (USAMA) |
| **To:** | Charles McGinty (charles_mcginty@fd.org) |
| **Subject:** | Barrett Rule 11 |
| **Date:** | Thursday, November 29, 2018 5:19:00 PM |

Hi Charlie – This is the statement of facts I propose to read tomorrow.

Between 9/12 and 1/16, Ashley Barrett participated in a mail fraud scheme. The scheme targeted elderly victims who did not know Barrett. These victims were contacted, usually by phone, and told that they had won the lottery. The victims were further told that they needed to pay money in the form of fees or taxes in order for their lottery winnings to be released. The victims were directed to pay the alleged fees or taxes to Ashley Barrett in Hyannis, MA. The victims mailed checks to Barrett, and she deposited them into one of several bank accounts in her name. Victims also wired money directly into Barrett's various bank accounts. The victims never got their money back. And of course they never received any lottery winnings b/c they had not, in fact, won any lottery.

In Count 7 of the indictment, Barrett is pleading guilty to receiving a check for $2500 made payable to her. The check was mailed by Victim 1 from Iowa to Barrett's home address in Hyannis, MA. Victim 1 sent the check via USPS Priority Mail Express. Barrett received the package on 7/2/15. On 7/6/15, she deposited the check into her Citizens Bank account ending in -8365.